Thank you your honor and good afternoon and we regret now having split argument but we will endeavor to you know with the court's indulgence but I'll address I came very close to saying that you shouldn't do it but we appreciate it almost never works but we'll see there's the same presumption in our office and we thought this was a case where it may help clarify the issues but I'll address the issues relating to suppression my colleague mr. Dratel will address the remaining issues and I'll watch the clock to try to split the time accordingly and we'll be at reserving two minutes for rebuttal may it please the court the linchpin of the government's investigation in this case was its reliance on the NSA's call records program under which the government collected the call records of millions of Americans including the defendants here for years without any suspicion never before has the government engaged clarify one thing at least in the non classified orders the merits of the 215 issue and not on on any question about fruits that of the poisonous tree or attenuation or any of that that's correct in fact the government didn't raise and you know an attenuation argument in the district court and we think it has waived it for purposes of appeal and we think even if it were raising it for the first time an appeal in the court indulge that argument we think there would be constitutional problems under alderman you know with the current posture and I'm happy to go into those later in our surveillance of the defendants was unlawful it violated section 215 of the Patriot Act because that statute permits the collection of only relevant records not all records and it violated the Fourth Amendment because it was unreasonable and that illegal surveillance tainted the bulk of the government's evidence at trial according to the government's own public descriptions the call records program directed its investigation to the evidence that was presented at trial and we think for that reason the resulting wiretaps must be suppressed I'd like to make three points if I may very broadly the first is that the surveillance here plainly violated section 215 and suppression is available for that statutory violation I won't belabor the argument on the merits suffice it to say that we agree with the Second Circuit's decision an ACLU versus Clapper in which it held that the government's interpretation of section 215 and of the relevance requirement in particular is unprecedented and unwarranted there's some open question on which the Second Circuit punted as to whether the new statute essentially should be taken as having declared that 215 didn't didn't mean what what the Second Circuit originally said it meant having argued that move that part of the trial that part of the the argument I think the Second Circuit was fairly clear in a supplemental order denying the motion for preliminary injunction that it viewed the legislative history of the USA Freedom Act as having provided for a six-month gap period to allow the continued collection of call records pending the effective date of you of the USA Freedom Act but I don't think it viewed the USA Freedom Act as having retroactively authorized the period of bulk collection prior to the Second Circuit's decision in May of 2015 and I don't think the court could have it but I don't think the Congress retroactively could have made lawful the surveillance that took place here seven years after the fact in any event the relevant question for our purposes I think is whether the surveillance was lawful under section 215 in 2007 when it began and continued throughout 2008 and I don't think Congress could have you know retroactively changed the legality of the surveillance so were relevance to have a different meaning I think you'd have extraordinary results which is why we think it plain that section 215 does not provide for bulk collection which is that the government could engage in bulk collection not just under section 215 but any on any other run-of-the-mill surveillance statute or subpoena authority that provides for the collection of relevant records it couldn't get of engaged in bulk collection not just of call records but a financial records internet usage records credit card records email records you're saying if they could do this mega data they could do a lot of different mega data is that what you're saying that's exactly right and they could do it not just in material support cases but in any other sort of case and run-of-the-mill criminal case and we think on the basis of that illegality suppression is warranted for two reasons the first statute suppression is warranted for two reasons the first is that section 215 and the surveillance here clearly implicate constitutional rights and this court has said that where a statute enforces constitutional norms that suppression is available as a statutory matter when we think that is the case here section 215 was designed to draw a balance between the government's investigative authority and the rights of Americans who may be swept up in an investigative authority and you can see that for example in his provision of minimization procedures which must be drawn to prevent the government surveillance authority from unduly affecting the privacy rights of Americans and you can see it in the requirement that the investigation not proceed solely on the basis of First Amendment protected activity the second way in which I think there is statutory suppression available is directly under FISA itself FISA requires suppression when elect when information acquired through electronic surveillance was unlawfully acquired and we think that is the case here this is under section 1806 e so in other words you're saying this is a title one problem which mandatorily requires suppression yes that's and even though it's underlying reason for the illegality is a violation of 215 that's correct because it's ultimately the electronic surveillance that you're trying to have suppressed that's right we don't think we don't think the provision 1806 e which requires suppression on the basis of information legal acquired is limited to you know statutory violations of title one we think Congress quite clearly meant to incorporate a broader understanding of what information that is unlawfully acquired means or another way of looking at it is that it's a statutory violation to use quote the first or poisonous tree if that's what happened here that's right so it is a violation of title one because it's then illegal that's right and we think there's a second reason why FISA provides for but you see that's why I began where I began because you know we what we don't have here is a finding about whether it was a fruit of the poisonous tree well I think that's because the government didn't contest that and I think that's well I think it's because the district court decided that there was simply no 215 violation so you don't get to that well the government had his full opportunity to brief his objections to the motion to suppress and it never once read the question of attenuation but why would you do that if the government and if they're there if the district courts position was that there was no suppression because there was no illegality then it's just the whole inquiry became truncated at that point the court certainly could remand you know after finding the legality to address the question of attenuation and the fruit we think that the government should have raised that in a district court we made our arguments about the legality of the surveillance we argued why we thought that the FISA wiretaps were the fruit of that surveillance and we think that the but more fundamentally if the court does remand for sorry I see her go ahead if the court does remand to address the issue of attenuation we think it should make clear that the district court has an obligation under alderman to order the government to disclose more information to the defense so that it can contest the government showing of attenuation alderman requires at the very least the disclosure of the illegally acquired information itself which in this case would be the call records collected under section 215 but it also requires at a bare minimum the disclosure of the government's classified showing of why it believes the investigation was not tainted by the 215 surveillance in this case that has been denied entirely to the defense and is a clear violation of alderman defense has clear counsel and can make appropriate accommodations for the government's secrecy interests but it cannot withhold that information from the defense entirely consistently with alderman in connection with the constitutional violation the argument raised by the government is the good faith exception to the exclusionary rule is the analysis the same with regard to statutory suppression I know the district court didn't reach those questions but is your position that the analysis would be the same that we look to the same sort of things whether it's a tip attenuation independent source and those kinds of considerations for good faith no we think that the statute mandates oppression and there's no exceptions for good faith the good faith exceptions that judicially created doctrine and Congress in this case that does not incorporated a good faith exception it is man and that's because the title one suppression provision is meant is shall and some of the other ones are me that's right I think 1806 F I believe says shall and if I may I also want to point to another provision if I said that I think requires suppression statutory matter the government argues that section 215 doesn't have any remedies available in it to those who are targets of investigations but I think the more relevant provision of FISA for purpose of the collection of call records is title 4 which is FISA pen register and trap-and-trace provision which shows that to the extent Congress was thinking about call records and it was thinking about call records in title 4 of FISA which it enacted in 1998 it provided explicitly for notice and a suppression remedy analogous to title ones suppression but a shell yes a shall suppression remedy so to get back to your question though judge new and we don't think for the statutory suppression question good faith is relevant nor do we think the question of deterrence is relevant although in terms of what about questions of attenuation in terms of deciding the scope of what should be suppressed attenuation may be relevant again we think the attenuation determination can only be made after alderman proceedings with an adversarial testing not on the basis of a one-sided record where the defense has been excluded and again we also think that the government has waived that but subject to those objections yes that would that would proceed in the district court on remand if that's the path the court took the second argument I'd like to make is that the search here was unconstitutional and the government is wrong in relying on Smith Smith was a dramatically different case that individual criminals but if we agree with you on 215 we don't need to reach that that's correct and the Second Circuit essentially mutter a little but then didn't reach that's right maybe taking the court's cue I'll turn to you know one final I'm not saying we're gonna do that I'm just I'm just trying to clarify well the pieces fit together I mean it's important always to look at the decision trees here to see it's only like one short point then about I'm not suggesting you give up on it we're certainly not waiving it let me make one small point then about the constitutional claim which is that the Supreme Court has always recognized that bulk collection is different it did so in knots decided four years after Smith where it said that even though a defendant's public movements are not protected by a reasonable expectation of privacy that 24-hour a day seven-day surveillance would be a different and unique constitutional question it did so more recently in Jones well the bulkness here is I mean there's a little sloppiness about what we're saying the bulk is it's lots of people it's everybody or almost everybody's a dispute about whether it's everybody or almost everybody but it's a lot of people but that's not the relevant bulk in terms of privacy right well we think there are two relevant books the more directly relevant one is that the government was collecting for a period of years each of the defendants call records in their entirety and holding on to them without suspicion the second which we think informs a privacy analysis is that they were collecting everyone's records makes any individual record more meaningful in the government's data mining but I think the first cause when when they because they can find out more about you because they can find well why exactly because the government's knowledge about my associates is more informed when it has all of their call records as well if I can find out that I called so-and-so and then so-and-so called so-and-so so I'm finding out not only who I'm calling but who who I'm calling is calling right that information is useful precisely for the reason that Facebook has a business model through its social graphing algorithms but I think the first thing precisely why for the reason that this is for somebody who doesn't have Facebook well it's a social graph analysis and social media is precisely the reason why this information is valuable but I think this court has also explicitly made clear that bulk collection is is different and it did so in a case called Nurbur where it where there is a houseguest who is surveilled but did not have an expectation of law at the time under Carter which had been decided by the Supreme Court but this court distinguished Carter which involves short-term visual surveillance of a houseguest who is not an overnight guest and it said in Nurbur this defendant has been surveilled for an extended period of time for a matter of hours and the surveillance was more invasive because it was videotaped and it distinguished Carter over a dissent but distinguished Carter and said that creates an expectation of privacy and for that reason there was a search not withstanding Carter if I leave one final point before turning over to my that suppression is warranted here the primary analysis courts engage in and deciding whether whether suppression is warranted is deterrence here we think deterrence is clearly warranted because the government has not abandoned its claim of legal authority it still maintains that relevance means everything it still maintains that the bulk collection of call records does not implicate a reasonable expectation of privacy and there's nothing to prevent it from relying on any of the other related subpoena authorities in seeking a relevance order as broad as this and we know it has done it under other relevance authorities the DEA had a bulk collection program under its subpoena statute 876 for decades that it recently ended for policy reasons but not for legal ones and that authority is like a loaded gun lying around waiting for the next executive official to decide that bulk collection you know to reverse this the current determination that bulk collection this is your deterrence argument yes it's awfully areas it's awfully sorry airy well I think that's what the court looks to in Dreyer for example it was relevant that this course decision in 2015 that the government had embraced the illegality had reformed itself a specific one but we didn't look to the question of whether they had embraced illegality in general I mean I had but they got worse one ever ever done doing anything and any illegal search but the government is defending its legal authority specifically with respect to section 215 as it existed now the government is still defending that that legal theory defending its constitutionality and we think that's relevant I'm gonna I see the time is short so I'll turn over my colleague mr. Mitchell thank you good afternoon may it please the court I'm Joshua Dreytel also appearing on the Brady argument 0.3 could you please tell me exactly what the Brady argument relates to my understanding is that you did get the fig document yes is your argument you got it too late no there did get the so-called psychological profile that was a timeliness issue as well as the that is that's a timeless that we got on I think Saturday before the Monday trial okay did it harm you in any way that late disclosure yes because when you're concentrating on putting everything together for trial and you get a avalanche of 3,500 material at once it is very difficult than to go out and commence an investigator that's why timeliness is an issue in Brady and that's why all the cases say so and that's why it's important that the government discharges obligations in a way that that makes it meaningful and not just as a technical matter that says well we gave it to you the day before trial so it's okay I don't think that's sufficient and as a trial counsel and someone who tried this case it wasn't sufficient so with respect but there are there are several elements to the Brady articles okay first the the the the just on the suppression issue alone the lack of disclosure is contrary to this courts long-standing since Barton now almost that can't possibly matter because you got it I mean I understand after the trial but you fully litigated it and if you need to litigate it some more you can litigate it some more so it's a retrospective suppression hearing but it's still suppression hearing it just doesn't go to the trial it goes to what the suppression question but I think it goes to also the question of the government's argument which is somewhat cynical which is we won't disclose if ever comes out then you got it I don't think that that's a valid might not be valid but it in terms of this particular case it just seems like there's no injury but there there's also additional injury with respect to what hasn't been disclosed and let's watch that one out now what else the the question of other agencies capturing mr. Marlins communications whether directly or indirectly he's still captured and there's a specific email that again we got that Saturday before trial that says another agency is interested because I'm in Ireland who the government thinks is a Naira whoever that would be is trying to reach Mo Allen so clearly they're up on that phone in some way through an authority and through an agency that's not the FISA it's some other agency because he's talking to the president what's the government's position on that it doesn't matter they have no position really they say their position was there's no indication essentially he doesn't have standing because the it appears that they were doing something with someone's phone but not his but he's overheard on it so why wouldn't he have but he wasn't over her because it didn't connect but we don't know about what other calls were overheard by that agency and what it was doing this is the problem with this is the alderman problem which is the government wants us all to trust the this court in Chun says the opposite and Donovan which is that if there is surveillance it has to be disclosed in a manner that can air it through the adversary process so that accurate and just conclusions this is a basically a cloak complete overlap with the notice question I don't think it's a complete overlap because it's also a question of getting the underlying information it's just not just notice but it's also what the information is which we still don't have and it's a very difficult proposition and you know in Missouri the Fourth Circuit made it clear that materiality in the context of Brady when the government's holding classified information that does not share with the defense that our burden is relaxed we can't you know if I've never seen an elephant I can't describe an elephant to you and if you've never seen an elephant that makes it doubly impossible so it's it's a very and that's why Missouri the Fourth Circuit recognized that our burden has to be relaxed in that regard because we don't know what we don't know we only know the tip of the iceberg and so you know the the other agency interceptions are also relevant to trial because we don't know what those phone numbers were and we don't know what they suggest I can't imagine that the government had a phone number that it could link demonstrably to Aden Iroh that is described in that email that it would not use that at trial to show that it's Aden Iroh but there was no such evidence there's no evidence connecting Aden Iroh to this case other than the government's theory and so the question is what would those got what would that what would those interceptions show in terms of who Mr. Molan is in in in connection with also indirect this is what we don't know till after trial this is not even on the eve of trial this is after trial the the basis for the for the the investigation according to the deputy director of the FBI and the director of the NSA both in public statements and testimony before Congress said Mr. Molan was in indirect contact with a terrorist overseas the government's entire theory is that it's Aden Iroh not indirect direct so we don't know that until after what what was the district courts ruling on this question there is no real ruling on this question I mean is the notion that there's something in the classified material that goes to this I don't know if it's in the class I know but it has the government or the district court said so we don't know because we don't know what the government's provided but have they said so at various points in the brief they said there's something that classified documents that illuminate this and they said they're not aware of it because we haven't seen I know I'm asking what well I'll ask them what no I mean you don't have to tell me what their argument is they'll tell me what their argument is and also just to put it in logistical context for the court but it's your ultimate argument that this can't be done in any classified proceeding in any in-camera proceeding either under the notice rubric or under the Brady rubric that they have to tell you where they actually got this from and can't say that's classified we'll show it to the judge that's correct your honor and there are standards under section 4 of the Classified Information Procedures Act which the government availed itself of early in the case and we made our submission of course not knowing what that information was we got a substitution it became a stipulation but that's factual that's not about this stuff that's about different sets of facts about what was going on in Somalia with the foundations and all the other aspects of the case but the point being that the suppression and the Fourth Amendment and the suppression remedy you're over your time so try and wrap up yes it's meaningless unless we have access and that's what Alderman stands for it is a constitutional imperative that a defendant get to participate in the adversary process I have an SCI clearance my co-counsel at trial had SCI clearance there is no reason there's no there's no indication there's no suggestion that that information surpassed our clearance it's just you don't get it and when you don't and when you don't get it think about trying to litigate in a situation we have no access to the facts and you have no body of FISA law at the time that we were litigating this was unknown to us the government has access to it but we don't so think about what the consequences for litigation are thank you hey please the court Jeffrey Smith for the United States and with me a council table our assistant United States Attorney Caroline Hahn and counterterrorism attorney Stephen Stephen Ward who were two of the prosecutors who tried this case at the district court your honor the defendants were convicted of serious offenses based on a fair trial and based on properly admitted evidence and there and evidence that the district court found was strong and compelling and the district court's rulings in this case should be affirmed and I'd like to address a few of the points that mr. Abdo and mr. Gertel made first of all it's not correct that the government did not raise the fruits argument in the in the district court the government raised it in its opposition to the new trial well I was it decided it was not decided by the court the government did raise it pages 8 and it wasn't decided because the district court's position was that there was basically agreed with your other arguments which is that there was no violation in the first place yes your honor we may we may not have fully described the district court proceeding below so if I could just very quickly the defendants asked for a new trial after they learned from the media let's assume that we know an awful lot about the one thing I want to point out is in there are in their motion they only they well they had a heading that said this violates the Fourth Amendment the First Amendment and FISA and other statutes nowhere in the text of their motion did they make any argument other than the Fourth Amendment and they tried to attach a brief from another another case but that's your argument that they waived it well I think they forfeited it but I'm my point here is to just explain why the district court didn't reach it the district court reached only the Fourth Amendment issue that right I didn't quite understand it to have done that I thought in passing at least to decide the state he said well I I I'm happy to be corrected on that I don't think the district court explicitly decided the statute it's a pure legal question we have a very well laid out there are several different cases but particularly the Second Circuit but decided well I think that if you're talking about the statutory question I think the statutory question is not actually presented here for a number of other reasons first as this court held in Plunk and as the Supreme Court held in Miller a defendant cannot collaterally attack a subpoena or an order that goes to a third party for that third party's records and while the and so based on that a defendant simply can't reach a collateral attack based on what they're essentially everything under title one of FISA about an order that's going to a third party I'm sorry isn't everything under title one of FISA about an order going to a third party okay so a title I'm sorry a title one FISA is for electronic surveillance for example of and that's what they're under that that they're challenging the electronic surveillance on the ground that it came about because of a violation of 215 and there was and it's fruit of the poisonous tree and not attenuating so now I understand the second part of it hasn't been decided but what's wrong with the theory well your honor I didn't understand them in their briefs to be arguing about title one in their briefs they are because their whole complaint is about the the phone calls that's what they're I mean ultimately what they want to suppress is the phone calls well I agree your honor that the you're absolutely right that the phone calls are the evidence at issue here and that they should be and that the question is ultimately whether the FISA court correctly found probable cause for those phone calls correct and they're saying no because the way you got the information that led to the phone calls was a was illegal well as a factual matter that's incorrect well that's a different point that's why I began by asking has anybody decided that question and the answer is no right yeah that's a factual question that somebody will have to address ie the district court if we were to decide that there actually is some 2015 problem here but leaving that is but what tell me why the answer is no other than that you think they're not connected up and you think you can I'm sorry the answer is no what was the question yeah why is the answer no what was the question to which why isn't it the case that this is a essentially a title one challenge to the use of the surveillance on the ground that it was premised on an underlying illegality under 215 and that there is a sufficient connection between that underlying legality and the what triggered their surveillance to allow the suppression of the surveillance now you said something about that's not the case what's not the case okay your honor let me let me see if I can step back in their briefs the theory that you're advancing is our theory that they advanced for the first time right here now assuming it to be true that they are challenging the title one decision they are I mean what else they can only challenge it based on the information that actually provided the probable cause right for okay the and as we've said if construed that way you're not challenging that there is a statutory suppression remedy that gets to the phone calls that's the basis of the government's evidence in this case do I have your position correct based on the exchange between judge Verzon and you if I understand your question I if the court finds a violation of title one of FISA then there is a statutory suppression remedy it's right in the statute yes that's correct and I'm sorry if I if I made that more complicated but you're saying there's no link back to the 215 what I'm yes what I'm saying your honor is that the probable cause for the FISA title one did not come from the 215 program and if I that's what nobody's ever decided because as I understood it the district court you said he didn't decide the statutory issue I thought he decided it but in any event he didn't seem to think there was any underlying illegality and so I don't understand how we avoid that question you're telling me we could just avoid it well I think you certainly can avoid it your honor because to the again to the extent that their argument is under title one of FISA then the district court did in fact do that review it did it reviewed title one of FISA now the only question for the court is whether the 215 program provided the probable cause and that's a question that this court can look at in camera just as the district court did and that and this court I thought the district court didn't that's why I began where I began the district court did it see that that that's I think perhaps part of the confusion is there is a separate motion that they made not the motion for a new trial they made an earlier motion to suppress so and the district court wasn't deciding whether the 215 material was the probable cause because he didn't have any 215 material well if he if he didn't have any to the district court reviewed the application at the earlier point at the earlier point the district court reviewed the applications in camera okay but it could be that all even though it's not in the application and if it isn't in the application it was still actually the trigger or I mean I don't know nobody's ever found this well your honor it's not enough that it's the trigger to open the investigation as this court found you want us to not decide the 215 question and somehow just jump to the to conclusion that there was no connection I think the court can decide the 215 question I think the court can take the issues in any order but I don't think it's correct that the court has to take it in the same order that the district court did I think the court has discretion that's true affirm on any basis that appears in the record and to the extent that there's a basis to affirm in the record I think that makes more sense than remanding for an issue that can't be decided here and I would submit that one issue that can't necessarily be decided on this record is the relevance question because the relevance question is whether  this case was issued whether it was asking for evidence that was relevant to a particular investigation there's no evidence in this case as to what investigations were even open at the time Mr. Abdo talks about this collecting all records or almost all records that's not the case the FISC has said publicly and we quoted this in our brief that the program never collected all or almost all records there's not a lot more I can say about that except that to sort of step back and say what happened in this case is not the kind of metadata analysis they're talking about or it's it's a and and all that was allowed under the law as Judge Egan's 2013 opinion describes is contact shaming in order to allow the government to find the identities or the potential identities of a suit of previously unknown associates of foreign terrorist organizations so what happened in this case is they took a phone number associated with an East Africa Al Qaeda terrorist and they put it in their database the database found that that person had been in phone contact with certain other numbers certain other numbers had been in contact with certain other numbers one of those numbers was a US number so the NSA sent it to the FBI to say you know here's a US number maybe you should check check that out I understand the argument of the plaintiffs it's that they only had that all that information and that database because they had been collecting Mr. Moulin's and everybody else's or lots of other people's phone information for seven or eight years well your honor they didn't quote seizing is how they characterize well I don't think they they they never kept the information in usable form for more than five years and the only reason it was kept beyond five years for litigation purposes all right so five years I was off by two years okay your honor if I could make a couple other points the defense reason but wait a minute oh yeah so I don't understand what that whole discussion was just about then in fact the search or the query only happened once they had a reason to connect to look for it but all the information if not for seven years but for five years was sitting on a computer somewhere meanwhile is that right is that I'm sorry I don't know what there was information on computers for a long period of time what we're talking about here though is basically a single data point and there's no reason to believe that that data point was sitting on computers for a long time moreover it's not unusual for the government when it collects business records to keep those records for for a number of years and it's not unusual for businesses when but it was but the underlying accusation and this is the one that the Second Circuit agreed with and and other courts as well was that at the time the information was collected from Mr. Moulin and the other co-defendants and everybody I don't know if not everybody else many many other people there was no that there was no kind of suspicion at all and that's that's just been that standards been changed now such that the government does not get that information until it has some basis for getting some basis for getting the information am I wrong you please correct me if I'm saying anything wrong this is all new to me well I'm not sure you're saying anything wrong but I want to clarify what the provision was and what it still is for the most part is a business record collection provision similar to a grand jury but with no it's as if you just went to every person United States and said give me everything that's in all your file drawers and we'll just keep it until we need it I don't think that's correct at all your now why not because what we're talking about is business records of the very type that were at issue in Smith versus Maryland's and in this court's cases such as I understand and I understand your Fourth Amendment argument but this isn't a Fourth Amendment argument that I'm discussing now but your honor business record but it is because the statute is based the passage is written with the background of Smith v. Maryland and United States versus Miller it's a business records collection provision and it's a relevant standard it's not a probable cause standard it's not because it's not a Fourth Amendment so how does the nature of the information affect the relevant standard well how does I'm sorry the nature of the information doesn't necessarily affect the relevant standard if I understand your question but it does it affects the way in which you get the information we're talking about getting business records from a company not about subpoenaing records from you know people's personal houses that would in fact raise Fourth Amendment issues your honor I do I have used a lot of my time and I'd like to address a couple other points okay please Jim first on Alderman Alderman is a case that involved a particularly complex factual question regarding tracing evidence and as the Supreme Court held shortly thereafter in Taglinetti versus United States which is at 394 U.S. 316 that Alderman was based on the complexity of that particular case it does not set forth a general rule that defendants are entitled to all classified information or any classified information in a particular case and this Court held similarly in United States versus Bissell 634 F second 1228 and I'd like to point out that in this case the district court did some in camera reviews and they were reviews that were done pursuant to FISA and pursuant to SEPA and those are statutes that were not at issue in Alderman and their statutes that this Court has applied and upheld in numerous cases. So your position is Alderman has little applicability to the case at hand? Well, I think particularly as Judge Berzon sees this as a Title I case because Title I gives a very clear way in which the district court and this Court on appeal is to review the FISA application materials and it is in camera ex parte and the district court is regardless of what the basis is for the motion. But with some possibility of allowing people, the plaintiffs to see the material? Yes, Your Honor. If the district court is unable to make the determination, then the district court can order disclosure. If the district court is able to, the district court must try first and if the district court is able to, it is not to disclose the information and there's numerous cases including this circuit, but a recent Seventh Circuit case, United States v. Daoud, addresses this in some depth. So that's the procedure that was used in this case and that was appropriate in this case. And the defendants did not in the district court or in their opening brief challenge the district court's application of those statutes, which was correct. The defendants hammered you pretty hard on Brady. Yes, Your Honor. Can you give your response for Brady? Sure, Your Honor. I'm glad you asked that because I did want to get to that. First, the... I wanted you to before the time ran out. Thank you, sir. The FIG analysis, the FIG analysis was a report that was done by the field intelligence group at the San Diego FBI. It was from a larger document, the government reviewed that and found some information that was arguably Brady and that that information was taken and put in another document, which is common in criminal cases. Usually it's put in a letter. In this case, it was put in another FBI document and that's what was turned over to the defense. It's not really... I gather they're not complaining about that, timing-wise. I don't believe they're complaining about that. They did complain here about what they call the personality profile. That's exhibit W, defense exhibit W. That was, as indicated, that was something that the defense did receive, did mark for identification, and did use in cross-examination. It was not produced late. It was not Brady material. It was Jenks material that went to the testimony of a particular witness, an interpreter. When was it produced? I don't know the exact date, but it was produced... The days before trial? That sounds about right. It was produced shortly before the interpreter testified. You're saying it wasn't Brady, it was Jenks, so it was timely. Yes, Your Honor. And it was used in the cross-examination. This court asked Mr. Drittel whether the district court had made any findings about Brady. And the answer is the district court more than once, but most recently in its ruling on the new trial motion, explicitly held that it had reviewed the record, it had reviewed the classified materials, and it had found no Brady. And it had no reason to believe that the government had not undertaken all of its discovery. Now, there's a big overlap with the notice argument, which I must say I don't understand very well, the notice argument, but I gather that the core of it is that this other agency thing suggests that there was some other surveillance going on here that has not been acknowledged or noticed. So, Your Honor, the other agency email is an email that was produced. It's not itself discoverable. It was context for Jenks, because a response to the email was Jenks material. The other – I don't really understand the relevance to their argument. The email does not describe any intercepted communications. In fact, it describes a communication that didn't happen that appears to – Well, I guess their argument is it suggests that they were looking – this is one that didn't go through, but how do we know there weren't others that did go through? Well, first I would point out, at this point, the government had Title I surveillance on Mr. Mulallen's phone numbers, so any conversations would have been captured by that program. Secondly, the context of another agency email suggests that – By other agencies? Because I take it that they're relying somewhat speculatively on the fact that there might have been capture conversations handled by other agencies. You're saying it all would have been covered under the Title I tab. Well, other agency – I don't know of any authority that an other agency could have used other than FISA Title I to target Mr. Mulallen, who was a U.S. person in the United States. To the extent that another agency was targeting, for example, Mr. Iroh, that seems – while there's no information in the record, that seems highly likely, because Iroh was a well-known terrorist that the government believed to be associated with al-Qaida. Is your position that they don't have any standing with regard to that, any particular targeting of Mr. Iroh, and that's – or what? Well, let me – I do want to clarify that. To the extent – first, in order to challenge any type of activity, it has to be linked up to the evidence that was used in the case, or alternatively, it has to be discoverable because it's Brady or the like. So they can't just say, well, we think there was some – But, of course, the problem is that because everything here is – or much – there's so much classified material, they can't – and the one – they say you haven't shown it, and then they say – and then you say, but it's classified and we can't tell you. Well, Your Honor, there is a way of dealing with this, which Congress enacted, and it's the Classified Information Procedures Act, or CIPA. And under that act, the government – to the extent there's any sort of gray area, the government goes to the court and says this is something that, you know, might arguably be discoverable, we think it's not discoverable, or alternatively, we want to substitute it in a way that won't give away, for example, sources and methods or that nature. There were CIPA proceedings in this case. The defendants haven't explicitly challenged those on appeal, and so we didn't put those in our classified filing, but they're in the classified record, which, of course, this court is entitled to from the CISO, if it wants to look at that, as I think it might. But – so to the – so I do want to just sort of summarize. To the extent that the defense is suggesting that the prosecution team suppressed or destroyed evidence of – that would be relevant to their suppression motion, that's simply not true. The government – the main issue, as you noted, is the Title I FISA. The government did submit its material appropriately, according to the FISA statute, and provided all the information to the government. The government provided some other information to the district court, pursuant to CIPA, and, you know, the government – and the district court made appropriate findings in both cases. So basically, the bottom line is the district court looked at the material, and we should look at the material, and that's adequate under CIPA and FISA. Is that your bottom line? Yes, Your Honor.  The district court looked at the – With regard to – and they're arguing, well, you at least have to give them notice of the surveillance, and you're saying that we might be able to look at the classified information and conclude there really wasn't any surveillance. Well, to the extent they're arguing that there's a notice requirement for Title V, I would like to say, no, there isn't in the statute. That doesn't matter, because you – I mean, it all came out anyway. Okay. As far as Title V is concerned. To the extent that – This is other agency stuff. They're – at one point, they talked below about Section 702, for example. That does have a notice provision that applies under certain circumstances. It wasn't – those circumstances weren't triggered here. That's why notice wasn't given. There are other types of – But we would only know that if we look at the classified material. Yes. Well, you know that notice wasn't given, because – Sorry, what? You would know that notice wasn't given to them, because notice would have been given to them on the public record.  I understand. I understand. And to the extent that they're – you know, so – so basically, the notice obligations that the government has are set forth in the statute, and the government complies with those. I see – Okay. You're over time. Anything else? No, Your Honor. Thank you. Thank you. You've both been very helpful, by the way, so thank you. Thank you. Your Honor, if I could just make three brief points. First on the interplay between FISA review and Alderman. FISA – the procedures set out in FISA for the review of FISA intercepts apply only to determinations of legality and not to determinations of whether illegal surveillance tainted the evidence at trial. Alderman clearly requires disclosure of information that would go to taint, and FISA does not supersede that. It couldn't as a constitutional matter, but it also doesn't as a statutory matter. The statute is very clear that it applies only to determinations of legality, and in the legislative history of FISA, it is very clear that the reason why Congress did that is specifically because of Alderman. But then to go back to where I started the whole situation here, the taint question has never been decided by the district court. That's right. It hasn't been decided. And it would seem if we got to that far down the road, we would just say go back. That's right. That's correct. And you could deal with your Alderman argument and everything else. That's right. I was just answering your question on the assumption that the Court might say something about the Alderman requirement. Okay. If it doesn't, then it left that to the district court, and we would address that to the district court. Then one final argument, then, is going back to the question of deterrence. The reason why we think deterrence is particularly important is because this is not the sort of case in which courts have typically not ordered suppression where there is one-off illegal surveillance. This is a situation in which the government ran – But again, to clarify, to go through the decision train. Right. If we think this is governed by Title I, we don't get to deterrence. That's correct. That's correct. I can't know which – what path the Court has already chosen. I'm – I don't know either, but I'm just trying to see what the decision structures are. Right. That's correct. I think it's important to make the argument nonetheless. This is a case in which the government operated this program secretly without any judicial review for years on a naked assertion of executive authority. Its lawyers then crafted a radical legal theory interpreting Section 215 in an unprecedented and unwarranted way that contradicted two centuries of practice of typical application of subpoena authorities based on relevance. The FISP granted the government's application and renewed it several – multiple times, but without ever subjecting that determination to adversarial testing and without even writing a legal opinion. By the way, do you agree that the district court didn't decide the statutory question and that it wasn't really argued to? It was presented to the district court. The opinion does not mention the statutory question. We raise it several times in our brief. We raise it up front in the – in the section where we describe the issues we were presenting. Further below, we briefly described the argument but relied on the – Was this all before Clapper? Is that why? Well, yes. That's correct. And we relied on the ACLU's briefing in Clapper for the statutory argument. Relied on it, meaning you gave it to the judge? We incorporated it by reference. And you gave it to him? I believe that we did, yes. We did give it to the judge. You know, so – and the FISC never even issued an opinion until seven years after the program came under statutory authority. The first legal opinion the FISC issued was in 2013, so this is not a circumstance in which the government is operating on the basis – Please wrap up. You're way over time. I have one – One more question. I have one question for you, if I can. The Government 28J letter says Graham, en banc, puts to rest – that's from the Fourth Circuit – puts to rest her Fourth Amendment challenge. Agreed? No. We don't agree, Your Honor. Graham was, again, still a case that dealt with targeted surveillance at an individual criminal suspect for a period of time significantly shorter than available here – than the government engaged in here. But in any event, it wouldn't put anything to rest because it's not our case. That's correct. We think this Court's decision – Should we choose to follow it? We think this Court's decision in Nurbur is the better precedent, and the D.C. Circuit's decision in Maynard, which also addressed prolonged surveillance and distinguished – You really – all right. Ten seconds. Speak fast. Yes. The government played a little bit of a shell game because they want to tell you that the district court looked at everything, but then they also say 215 wasn't part of the FISA application. They can't sanitize it as a Brady matter or even as a Fourth Amendment matter by not – by sanitizing – by leaving it out of the FISA applications when that was the source of all the information. Okay. But again, all of this we would not decide. Right. Not decide it. But also, with respect to – specifically with respect to the personality profile, there's no – the personality profile, it was done 10 months after the wiretap ended. So it's done sometime in 2009. This FIG assessment also – I mean, how is the personality not Brady? How is it Jenks when – But they gave it to us. When he says – when the – but they gave it to us on the day before trial. Have you ever said anything specific about what prejudice that caused? Excuse me? Yes. Have you ever – Yes, because – and it has to – and it goes back also to the initial investigation of Mr. Molan, which we never got any notice of, which is an important Brady. Our defense was intent that these defendants, and Mr. Molan in particular, who is a primary communicator, never intended to provide material support to al-Shabaab or any terrorists. And these statements from the personality profile, such as Mr. Molan was bothered by the suffering and destruction in Somalia caused by both the fighting and the drought. Mr. Molan wanted to be successful in Somali politics and become a wealthy businessman with many children. That was his life goal. Right. But the point is – No, you really have to stop. Yes. Thank you. Okay. Thank you, Your Honor. Thank you very much. Thank you all. Very interesting case. The case of United States v. Molan is submitted. And we are adjourned. Thank you. All rise.
judges: Berzon, Nguyen, Zouhary